UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAVID WELLS,

                                        Plaintiff,

                        -vs-                                        14-CV-197-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                                        Defendant.

_____

APPEARANCES:    LAW OFFICES OF KENNETH HILLER (KENNETH HILLER, ESQ.,
                of Counsel), Amherst, New York, for Plaintiff.

                WILLIAM J. HOCHUL, JR., United States Attorney (JASON
                PARKERSON PECK, Assistant United States Attorney, of Counsel),
                Buffalo, New York, for Defendant.

        This matter has been transferred to the undersigned for all further proceedings, by

order of Chief United States District Judge William M. Skretny dated December 15, 2014

(Item 10).

        Plaintiff David Wells initiated this action on March 24, 2014, pursuant to the Social

Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final determination of

the Commissioner of Social Security ("Commissioner") denying plaintiff's application for

Supplemental Security Income ("SSI") benefits under Title XVI of the Act.  Plaintiff has

moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure (*see* Item 6).  For the following reasons, plaintiff's motion is denied.

## **BACKGROUND**

Plaintiff was born on January 4, 1965 (Tr. 29, 104).[1]   He filed an application for SSI on February 8, 2011, alleging disability due to human immunodeficiency virus ("HIV"), Hepatitis C, gunshot wound, post traumatic stress disorder ("PTSD"), depression, and anxiety, with an onset date of February 1, 2010  (Tr. 104-10).   This claim was denied administratively on May 27, 2011 (*see* Tr. 63-70).   Plaintiff requested a hearing, which was held on August 14, 2012, before Administrative Law Judge ("ALJ") Grenville Harrop (Tr. 26-60).   Plaintiff appeared and testified at the hearing, and was represented by counsel.

On August 23, 2012, ALJ Harrop issued a decision finding that plaintiff was not disabled within the meaning of the Act (Tr. 13-21).   Following the sequential evaluation process outlined in the Social Security Administration regulations (*see* 20 C.F.R. § 416.920), the ALJ found that plaintiff had the following "severe" impairments: HIV positive; chronic low back pain, status-post gunshot wound; PTSD; anxiety; depression; and polysubstance abuse, reported in remission (Tr. 15).   However, the ALJ found that the evidence in the record regarding plaintiff's signs, symptoms and functional limitations did not support a finding that these impairments, considered singly or in combination, met or medically equaled the criteria of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 16).   The ALJ specifically considered the criteria for mental impairment Listings 12.04 (Affective Disorders), 12.06 (Anxiety Related Disorders), and 12.09 (Substance Addiction Disorders), but found that plaintiff's mental impairments did

---

[1]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner at the time of entry of notice of appearance in this action (Item 5).

not result in restrictions or limitations to the degree necessary to meet or equal any of these Listings (Tr. 16-17).  The ALJ then discussed the evidence in the record regarding plaintiff's medically determinable physical and mental impairments–including treatment notes and records from several hospitals, clinics, and other health care facilities, along with plaintiff's hearing testimony and statements about the limiting effects of his impairments–and determined that plaintiff had the residual functional capacity ("RFC") to perform medium work[2] limited to simple tasks (Tr. 17-20).  Considering plaintiff's age (46 years at the time of the hearing), education (marginal), work experience (no past relevant work), and RFC, and using Rule 203.25 of the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "Grids") as a framework for decisionmaking, the ALJ determined that jobs exist in significant numbers in the national economy that plaintiff can perform, warranting a finding of "not disabled" (Tr. 20-21).  Finally, in accordance with 20 C.F.R. § 416.935, the ALJ determined that since plaintiff would not be disabled if he stopped using drugs or alcohol, his substance use disorder was a contributing factor material to the determination of disability, and therefore he was not disabled within the meaning of the Act at any time since the application filing date of February 8, 2011 (Tr. 21).

The ALJ's decision became the final decision of the Commissioner on January 31, 2014, when the Appeals Council denied plaintiff's request for review (Tr. 1-3), and this action followed.

---

[2] "Medium work" is defined in the Regulations as follows:

Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. § 416.967(c).

In his motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because the ALJ (1) improperly evaluated whether plaintiff's substance abuse was material to the disability determination; (2) failed to properly consider the effect of plaintiff's schizophrenia; and (3) failed to obtain an expert medical opinion to support his assessment of plaintiff's RFC. *See* Item 6-1. The government contends that the Commissioner's determination should be affirmed because the ALJ's decision was made in accordance with the pertinent legal standards and is based on substantial evidence in the record. *See* Item 8.

## DISCUSSION

### I.   Scope of Judicial Review

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive …." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999). The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts. *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings

for those of the Commissioner.  *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012).  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards."  *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. Mar. 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773).  "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations."  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted).  Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence.  *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied … the court shall review only the

question of conformity with [the] regulations …."); *see Kohler*, 546 F.3d at 265.  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it.  *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013).  "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying.  *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.     Standards for Determining Eligibility for Disability Benefits

To be eligible for SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that he suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C.

-6-

§ 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 416.905(a). As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R. § 416.920. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. § 416.920(c); *see also* § 416.909 (duration requirement). If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings. If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work. If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled, and the sequential evaluation process comes to an end. Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and

RFC.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform.  *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)).  "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience."  *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted).  If, however, a claimant has non-exertional limitations (which are not accounted for in the grids) that "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status …."  *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted).  In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' "  *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).  Where the record supports a finding that the claimant's non-exertional limitations would have little or no effect on the occupational base of unskilled work, the ALJ may properly rely on the Grids as a framework for decisionmaking, without consulting with a vocational expert, to satisfy the Commissioner's burden at the final step of the sequential evaluation.

*Cornell v. Colvin*, 2014 WL 1572342, at *9 (W.D.N.Y. Apr. 18, 2014) (citing *Zabala v.*

*Astrue*, 595 F.3d 402, 410–11 (2d Cir. 2010); *Bapp*, 802 F.2d at 605-06).

In addition, when there is medical evidence of a claimant's drug or alcohol abuse,

the disability inquiry does not end with the five-step analysis. *See Cage*, 692 F.3d at 123;

20 C.F.R. § 416.935(a). As explained by the Second Circuit in *Cage*:

> In 1996, Congress enacted the Contract with America Advancement Act (the "CAAA"), which amended the Act by providing that "[a]n individual shall not be considered … disabled … if alcoholism or drug addiction would … be a contributing factor material to the Commissioner's determination that the individual is disabled." Pub.L. 104–121, 110 Stat. 847 (codified at 42 U.S.C. § 1382c (a)(3)(J)). The critical question is "whether [the Social Security Administration] would still find [the claimant] disabled if  he stopped using drugs or alcohol."   20 C.F.R. § 416.935(b)(1); see also 20 C.F.R. § 416.935(b)(2)(i) ("If [the Commissioner] determine[s] that [the claimant's] remaining limitations would not be disabling, [she] will find that [the] drug addiction or alcoholism is a contributing factor material to the determination of disability.").

*Cage*, 692 F.3d at 123.

## III.    The ALJ's Disability Determination

In this case, ALJ Harrop determined at step one of the sequential evaluation that

plaintiff had not engaged in substantial gainful activity since February 8, 2011, the

application date (Tr. 15).  At step two, the ALJ determined that plaintiff's impairments are

"severe" as that term is defined in the regulations because they cause "more than minimal"

work related functional limitations (*id.*).  As noted above, at step three the ALJ found that

plaintiff's impairments did not meet or medically equal the severity of a listed impairment,

with specific consideration given to the criteria of mental impairment Listings 12.04, 12.06,

or 12.09 (Tr. 16-17).  The ALJ then found that plaintiff had the RFC for medium work,

limited to performing simple tasks (Tr. 17).   In making this determination, the ALJ discussed plaintiff's hearing testimony and statements in the record regarding his symptoms (including sweating, chronic cough, recurring bouts of pneumonia, flu-like symptoms, nausea, and fatigue), along with the objective medical evidence contained in the extensive treatment records obtained from Buffalo General Hospital; Erie County Medical Center; Medical Care of Western New York; Evergreen Health Services; Pathways at Sisters Hospital; and Spectrum Human Services (Tr. 17-19).   Based upon his consideration of this evidence, the ALJ found that plaintiff's allegations regarding the limiting effects of his symptoms were not credible to the extent they were inconsistent with the RFC assessment, and that the record otherwise failed to establish the presence of any chronic disabling impairment (Tr. 19).   The ALJ noted that the records contained no treating or examining source opinion indicating functional limitations greater than those assessed, and further, that the medical records reflected plaintiff's noncompliance with treatment recommendations and continued substance abuse, indicating his "apparent disinterest in conscientiously pursuing and following the appropriate medical treatment regimen" (Tr. 20).

Upon determining that plaintiff had no past relevant work, at the final step of the sequential evaluation the ALJ found that there were jobs existing in substantial numbers in the national economy that plaintiff could perform considering his age, education, work experience, and RFC (Tr. 20-21).   The ALJ relied on the Grids as a framework for decisionmaking, noting that limiting plaintiff to the performance of simple tasks would have little or no effect on the occupational base of unskilled medium work, and that a finding of "not disabled" under Rule 203.25 was therefore appropriate (Tr. 21).

Finally, the ALJ determined that:

Because the [plaintiff] would not be disabled if he stopped the substance use (20 CFR 416.920(g)), the [plaintiff's] substance use disorder(s) is a contributing factor material to the determination of disability (20 CFR 416.935).  Thus, the [plaintiff] has not been disabled within the meaning of the Social Security Act at any time through the date of this decision.

(Tr. 21).

IV.    **Plaintiff's Motion**

A.    **Effect of Plaintiff's Substance Abuse**

Plaintiff first argues that the Commissioner's determination should be reversed, or the case should be remanded to the Commissioner for further consideration, because ALJ did not properly analyze the effect of plaintiff's substance abuse on the determination of disability.  As indicated above, the CAAA altered the traditional definition of disability under the Social Security Act by excluding from consideration conditions materially caused by drug addiction or alcoholism ("DAA").  *Cage*, 692 F.3d at 124.  To implement the "DAA Amendment," the Commissioner promulgated formal regulations and published an interpretive policy ruling as a guide for administrative adjudicators in evaluating cases with medical evidence of substance abuse.  *See* 20 C.F.R. § 416.935; SSR 13–2p, Titles II And XVI: Evaluating Cases Involving Drug Addiction And Alcoholism (DAA), 2013 WL 621536, at *4 (S.S.A. Feb. 20, 2013).  As explained in this regulation and ruling, "[i]n such cases, even though claimants initially meet the traditional definition of 'disabled' (inability to engage in substantial gainful activity), administrative adjudicators must conduct a secondary analysis to determine whether drug addition or alcoholism is material to an initial

finding of disability." *Smith v. Commissioner of Social Sec.*, 2014 WL 3392336, at *6

(N.D.N.Y. July 10, 2014) (citing SSR 13–2p, 2013 WL 621536, at *4).

> A "key factor" in such secondary analysis is whether claimants would still be found disabled if they stopped using drugs or alcohol. See 20 C.F.R. § [416.935(b)(2)]. Administrative adjudicators first determine whether physical and mental limitations would remain in the absence of substance abuse. If so, they then decide whether those remaining limitations are disabling on their own. If so, claimants are considered disabled within the meaning of the Act notwithstanding their drug addiction or alcoholism. If not, alcohol or substance abuse is considered material, and claimants are not eligible for benefits. 20 C.F.R. § [416.935(b)(2)(ii)].

*Id.* at *7.

As indicated above, there is substantial evidence in the voluminous record before

the court to establish plaintiff's longstanding history of drug and alcohol use, and the ALJ

fully explained his consideration of the entire record in finding that, even if plaintiff stopped

the reported substance use, the functional limitations caused by his other impairments

would not be disabling on their own. The ALJ then found that plaintiff's substance abuse

disorder was a contributing factor material to the determination of disability, thereby

precluding his eligibility for SSI benefits. This is all that is required of the administrative

adjudicator under the DAA Amendment and the implementing regulations and rulings. *See*

20 C.F.R. § 416.935(b)(2)(i) ("If we determine that your remaining limitations would not be

disabling, we will find that your drug addiction or alcoholism is a contributing factor material

to the determination of disability."); SSR 13-2p, 2013 WL 621536, at *5-*6 (outlining six-

step DAA evaluation process; "Step 2: Is the claimant disabled considering all of his or her

impairments, including DAA? Apply the appropriate sequential evaluation process to

determine whether the claimant is disabled considering all of his or her impairments,

including DAA. If the claimant is not disabled, deny the claim.").

-12-

Accordingly, plaintiff is not entitled to reversal or remand on the ground that the ALJ improperly considered the materiality of plaintiff's substance abuse on the determination of disability.

### B.    Effect of Plaintiff's Schizophrenia

Plaintiff also contends that the ALJ failed to properly consider (at step two of the sequential evaluation process) the severity of plaintiff's schizophrenia, and (at step five) the effect of the schizophrenia on plaintiff's ability to work.  This contention must likewise be rejected.

Where the record establishes the presence of multiple impairments, and the ALJ finds at step two that some impairments (but not others) are severe, thereby allowing plaintiff's claim to proceed through the sequential evaluation process, any error in the ALJ's severity analysis must be considered harmless.  *See Stanton v. Astrue*, 370 F. App'x 231, 233 n.1 (2d Cir. 2010); *Webb v. Colvin*, 2014 WL 3389369, at *5 (W.D.N.Y. July 10, 2014). As discussed above, in this case the ALJ found at step two that plaintiff had multiple severe impairments (HIV positive; chronic low back pain, status-post gunshot wound; PTSD; anxiety; depression; and polysubstance abuse), and at step three, the ALJ specifically considered the evidence of record–including treatment notes containing the diagnosis of schizophrenia–to determine whether plaintiff's mental impairments, alone or in combination, met or equaled the criteria of the Listings (Tr. 18-20).  The ALJ's ruling further reflects his full consideration of the effect of these impairments on plaintiff's ability to perform simple work-related activity at the medium exertional level (*id.*). *Cf. Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (ALJ's failure to consider

severity of mental impairments at step two deemed harmless error; ALJ identified other severe impairments and proceeded with subsequent steps, where the effects of the mental impairments were considered) (citing *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (finding harmless error where the ALJ's consideration of a doctor's report would not have changed the ALJ's adverse determination).

Accordingly, plaintiff is not entitled to reversal or remand on the ground that the ALJ failed to properly consider the severity of plaintiff's schizophrenia, or its effect on plaintiff's ability to work.

### C.      Failure to Obtain Expert Medical Opinion

Finally, plaintiff contends that the ALJ erred by failing to obtain an opinion from a medical expert to support his RFC assessment.  In this regard, the Second Circuit has long recognized the proposition that, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel ….' "  *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)).  This duty "includes assembling the claimant's complete medical history and recontacting the claimant's treating physician if the information received from the treating physician or other medical source is inadequate to determine whether the claimant is disabled ...," as well as "advising the plaintiff of the importance of such evidence." *Batista v. Barnhart*, 326 F. Supp. 2d 345, 353 (E.D.N.Y. 2004).  The regulations also give the ALJ the option to obtain further medical evidence by requesting that the claimant attend a consultative examination, *see* 20 C.F.R. § 416.912(e), and by requesting opinions from "medical experts on the nature and severity

-14-

of [an individual's] impairment(s)."  20 C.F.R. § 416.927(e)(2)(iii); *See Haskins v. Astrue*, 2010 WL 3338742, at *5 (N.D.N.Y. Apr. 23, 2010).

Conversely, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."  *Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011) (internal quotation marks omitted).  The Second Circuit has also clarified that the ALJ's failure to request the opinion of a medical source does not require remand "where, as here, the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity."  *Tankisi v. Comm'r of Social Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (citing *Moser v. Barnhart*, 89 F. App'x 347, 348 (3d Cir. 2004); *Scherschel v. Barnhart*, 72 F. App'x 628, 630 (9th Cir. 2003); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)).

In this case, the record contains no medical source assessment of plaintiff's ability to work.  However, the court's review of the voluminous treatment notes and other medical records from numerous health care providers reveals evidence "adequate to permit an informed finding by the ALJ" with regard to plaintiff's functional capacity for substantial gainful employment despite the limitations caused by his physical and mental impairments. *Tankisi*, 521 F. App'x at 34.

Accordingly, plaintiff is not entitled to reversal or remand on the ground that the ALJ failed to request an opinion from a medical expert in assessing residual functional capacity.

**CONCLUSION**

For the foregoing reasons, the court finds that the ALJ's decision is based on correct legal standards and supported by substantial evidence, and the Commissioner's determination must therefore be upheld.  Therefore, plaintiff's motion for judgment on the pleadings (Item 6) is denied, and the case is dismissed.

The Clerk of the Court is directed to enter judgment in favor of the Commissioner, and to close the case.

So ordered.

_____\s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated:   March 18, 2015